# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

---

No. 05-6011 WM

---

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Virginia P. Dale, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Virginia P. Dale, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Plaintiff - Appellant, | * | Western District of Missouri |
| | * | |
| v. | * | |
| | * | |
| HomEq Servicing Corporation; | * | |
| Betty Veasey; Ken Thompson; | * | |
| Judy Brookman; | * | |
| Sandra Rodriguez-Villalovoz; | * | |
| Jill Olsen; Michael P. Gaughan; | * | |
| Jan Henryck; Kozeny & McCubbin, | * | |
| L.C. and Amy Hope Davis, | * | |
| | * | |
| Defendants - Appellees. | * | |

---

Submitted: September 19, 2005
Filed: November 4, 2005

---

Before KRESSEL, Chief Judge, SCHERMER and MAHONEY, Bankruptcy Judges

SCHERMER, Bankruptcy Judge

Plaintiff Virginia P. Dale ("Plaintiff") appeals the bankruptcy court's[1] entry of judgment pursuant to Federal Rule of Civil Procedure 52(c) in favor of Defendants HomEq Servicing Corporation, Betty Veasey, Ken Thompson, Judy Brookman, Sandra Rodriguez-Villalovoz, Jill Olsen, Michael P. Gaughan, Jan Hendryck, Kozeny & McCubbin, L.C., and Amy Hope Davis ("Defendants") on all fifteen counts in her amended complaint. We have jurisdiction over this appeal from the final order of the bankruptcy court. *See* 28 U.S.C. § 158(b). For the reasons set forth below, we affirm.

## ISSUE

The Plaintiff lists six issues on appeal in her brief.[2] We consolidate the issues into two: whether the bankruptcy court erred in its finding of facts and whether it properly applied the law to the facts. We conclude that the bankruptcy court did not err in its findings of fact. We also conclude that the bankruptcy court properly applied the law to the facts in this case.

## BACKGROUND

---

[1]The Honorable Jerry W. Venters, United States Bankruptcy Judge for the Western District of Missouri.

[2]The issues identified by the Plaintiff are:
1. Did the mortgage and their Servicing Agent engage in manipulating tactics to create the default alleged in the complaint. 2. How did the Servicing agent create and use delay tactics to ensure a defaulted loan. 3. Did HomeQ Servicing commit fraud ignoring the appellants "Qualified Written Requests" 4. Has HomeQ Servicing committed fraud upon the court by stating that they are the holder and owner of the note-when in fact-they do not even own the note. 5. Create additional false deficiencies through a variety of questionable practices. 6. Arrogantly violating numerous laws and regulations.
(citations omitted).

On November 24, 1998, the Plaintiff obtained a loan from The Money Store in the principal amount of $34,083 bearing interest at the rate of 9.750%. The loan was secured by a mortgage on the Plaintiff's residence.

On December 14, 1999, the Plaintiff filed a petition for relief under Chapter 7 of the Bankruptcy Code. The Plaintiff obtained a discharge of her personal liability on the mortgage debt in the Chapter 7 proceeding; however the mortgage survived the bankruptcy and remained an indebtedness secured by the Plaintiff's residence.

On July 18, 2000, the Plaintiff filed a petition for relief under Chapter 13 of the Bankruptcy Code. The case was dismissed because of the Plaintiff's failure to make plan payments. One June 11, 2001, the Plaintiff filed a second Chapter 13 petition. The second Chapter 13 case was also eventually dismissed because of the Plaintiff's failure to make plan payments. Prior to the dismissal of the second case, the Plaintiff entered into a stipulation with The Money Store acknowledging that the principal amount of the debt secured by her residence was $33,865.82 and additional arrearages of $7,565.66 were owed for a total indebtedness of $41,431.48.

On November 7, 2000, The Money Store notified the Plaintiff that Fairbanks Capital Corp. was the new servicer of her loan. Fairbanks Capital Corp. sent the Plaintiff a similar notice on December 5, 2000. Fairbanks Capital Corp. and HomEq Servicing Corporation ("HomEq") are the same entity.

On December 9, 2002, HomEq sent the Plaintiff a letter notifying her that her account was under review for foreclosure. That letter provided an itemized accounting of the total amount necessary to cure the default, $19,429.23. The Plaintiff was unable to pay that amount so she contacted the Kansas City Housing Information Center ("HIC") for assistance. P.J. Phelps, a case manager with the HIC assisted the Plaintiff. On December 19, 2002, Phelps sent a letter to Ken Thompson, the President and CEO of Wachovia Corporation, the corporate parent of HomEq, requesting an

3

accommodation on behalf of the Plaintiff. Thompson directed HomEq to take care of the problem. HomEq sent the Plaintiff a loan modification offer on January 22, 2003, proposing a modified loan amount of $42,194.85 with 8% interest payable in monthly payments of $321.78. As conditions to modification, the Plaintiff was required to pay a $578 loan modification fee and to return a signed copy of the modification agreement to HomEq.

The Plaintiff was unable to pay the loan modification fee so she sought further assistance from Phelps. Phelps was able to provide the Plaintiff with funds to cover the loan modification fee as well as the first month's payment under the modified loan by pooling resources with another organization, the United Services Community Action Agency. The Plaintiff marked up the proposed loan modification agreement before signing it and returning it to HomEq.

When the Plaintiff sent her payment and a voided check to initiate direct withdrawal of future payments on the modified loan, HomEq returned the checks and notified the Plaintiff that it could not accept the payments because she was in bankruptcy and that the checks were insufficient to reinstate the mortgage. The Plaintiff was not in bankruptcy at the time, so she again sought assistance from Phelps. In response to Phelps' July 3, 2002, inquiry, HomEq sent the Plaintiff a letter on July 25, 2003, apologizing for its error and explaining that the checks were returned because the file had not been updated to reflect the modified loan terms because the Plaintiff had not returned an unaltered modification agreement to HomEq. The letter advised the Plaintiff that another loan modification agreement was being sent to her via certified mail for her proper execution. The Plaintiff never returned a properly executed loan modification agreement to HomEq.

The Plaintiff did not make any additional payments under the loan, either in its original form or pursuant to the proposed modifications. In August, 2003, HomEq

notified the Plaintiff that her loan was in foreclosure status. The Plaintiff filed her third Chapter 13 bankruptcy petition on January 9, 2004.

On February 23, 2004, the Plaintiff filed a complaint against HomEq and Wachovia Corporation. On October 14, 2004, the Plaintiff filed her Second Verified Amended Complaint against the Defendants seeking relief under fifteen counts: civil conspiracy; two counts of violations of RICO; violations of the Fair Debt Collection Practices Act; negligence; reckless or negligent misrepresentation of material facts; breach of contract; violation of Real Estate Protection Act; fraud; intentional infliction of emotional distress; unjust enrichment; violation of the Fair Credit Reporting Act; torturious [sic] interference with contractual relations; violation of Truth in Lending Act; and violation of Trade Commission Act.

At HomEq's suggestion, the parties agreed to a bifurcated proceeding as follows: (1) the Defendants would initially forego discovery efforts yet would respond to the Plaintiff's discovery requests which were pending on December 10, 2004; (2) upon conclusion of the Plaintiff's discovery, the court would hear the Plaintiff's evidence and argument; (3) at the close of the Plaintiff's case-in-chief, the Defendants would move for judgment on partial findings pursuant to Federal Rule of Civil Procedure 52, applicable in bankruptcy cases pursuant to Federal Rule of Bankruptcy Procedure 7052; (4) if any of the Plaintiff's claims survived the Rule 52 motions, the Defendants would take discovery from the Plaintiff and her proposed experts and witnesses on the remaining claims; and (5) upon completion of the Defendants' discovery, the parties would reconvene for trial on the Plaintiff's remaining claims, if any.

In accordance with the trial procedures agreed upon among the parties, the Plaintiff presented her case-in-chief on January 7, 2005. The Plaintiff called two witnesses and provided her own narrative testimony. At the close of the Plaintiff's presentation and argument, the Defendants moved for judgment as a matter of law.

The Defendants filed written Rule 52 motions after the hearing. The Plaintiff filed her response to the motions. After considering the evidence presented and the arguments of the parties at trial and in the motions and the Plaintiff's response to the motions, the bankruptcy court entered its opinion and judgment in favor of the Defendants on all counts. The Plaintiff appeals the entry of judgment for the Defendants on all counts of her complaint.

## STANDARD OF REVIEW

We review the bankruptcy court's findings of fact for clear error and we review its entry of judgment pursuant to Rule 52(c) *de novo*. *Minn. Laborers Health & Welfare Fund v. Scanlan*, 360 F.3d 925, 927 (8th Cir. 2004); *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000).

## DISCUSSION

Pursuant to Civil Procedure Rule 52, applicable herein pursuant to Federal Rule of Bankruptcy Procedure 7052, if during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim that cannot be maintained under controlling law without a favorable finding on the issue. Fed. R. Civ. P. 52(c). Such a judgment shall be supported by findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a). In the instant case, the matter was tried without a jury and the Plaintiff was given ample opportunity to present her case. At the end of the Plaintiff's presentation of her evidence, the Defendants moved for judgment pursuant to Rule 52(c) and presented written Rule 52 motions to the court. The Defendants electronically filed written Rule 52(c) motions after the hearing. The Plaintiff was given seventeen days to file a written response to the Rule 52 motions. After the Plaintiff filed her written response to the motions, the court carefully considered the evidence and issued its findings of fact, conclusions of

6

law, and order. The findings of fact are supported by the record on appeal. The bankruptcy court committed no error in its findings of fact.

The bankruptcy court addressed each of the fifteen counts in the Plaintiff's Amended Complaint. The court identified the elements required for recovery by the Plaintiff under each count and analyzed the facts presented by the Plaintiff to determine whether she had established a prima facie case. The court applied the law to the relevant facts and properly determined that the Plaintiff had not established a prima facie case under any count. The court properly entered judgment in favor of the Defendants and against the Plaintiff on each count. We find no error in the bankruptcy court's thorough and well reasoned opinion and accordingly affirm its opinion and judgment.

## CONCLUSION

The bankruptcy court committed no error in its entry of judgment pursuant to Fed. R. Civ. P. 52(c) in favor of the Defendants at the close of the Plaintiff's evidence. Accordingly, we AFFIRM the bankruptcy court's entry of judgment in favor of the Defendants and against the Plaintiff.